# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

### COLUMBIA DIVISION

NATIONWIDE PROPERTY           )
AND CASUALTY INSURANCE        )
COMPANY,                      )
                              )
          Plaintiff,          )    Civil Action No. 3:08-430-CMC-JRM
                              )
v.                            )
                              )
MARK PETERS, WENDY            )
PETERS, M&S CONSTRUCTION      )
COMPANY, LLC, AND LUTHI       )
MORTGAGE COMPANY, INC.,       )
                              )
          Defendants.         )    **REPORT AND RECOMMENDATION**
                              )
LUTHI MORTGAGE COMPANY,       )
INC.,                         )
          Third-Party Plaintiff,  )
                              )
v.                            )
                              )
GREAT AMERICAN ASSURANCE)
COMPANY,                      )
                              )
          Third-Party Defendant.)
                              )
LUTHI MORTGAGE COMPANY,       )
INC.,                         )
          Counter Claimant,       )
v.                            )
NATIONWIDE PROPERTY AND       )
CASUALTY INSURANCE            )
COMPANY,                      )
          Counter Defendant.      )
_____)

      Plaintiff, Nationwide Property and Casualty Insurance Company ("Nationwide"), filed this

action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.,* on February 7,

2008, for a judicial determination of the rights and obligations of the parties relating to a homeowner's insurance policy issued to Mark Peters ("M. Peters") and Wendy Peters ("W. Peters") for a dwelling located at 7 Enlow Court, Columbia, South Carolina ("the property"). In addition to M. Peters and W. Peters, Nationwide named as parties Defendant M&S Construction Company, LLC ("M&S") and Luthi Mortgage Company, Inc. ("Luthi"). On March 10, 2008 Luthi filed an answer and counterclaim against Nationwide and a third party complaint against Great American Assurance Company ("Great American"). M. Peters, W. Peters, and M&S filed an answer, through counsel, on March 13, 2008. Nationwide filed a reply to Luthi's counterclaim on March 28, 2008. Great American filed an answer to Luthi's complaint on April 21, 2008.

Counsel for M. Peters, W. Peters, and M&S filed a motion to be relieved as counsel. The Court issued an order on January 14, 2009, to allow the parties to respond to the motion by January 23, 2009, and specifically advising M&S that if replacement counsel did not appear by that date it would be held in default as a corporation cannot proceed *pro se*. The Court issued a second order on January 26, 2009 relieving counsel for M. Peters, W. Peters, and M&S. M&S was ordered to be in default, and because M. Peters and W. Peters were *pro se* the case was referred to the undersigned for pretrial matters pursuant to Local Rule 73.02(B)(2)(e), (D.S.C.).

Nationwide has filed separate motions for summary judgment as to M. Peters and W. Peters (Doc. No. 68), Luthi (Doc. No. 69) and M&S (Doc. No. 70). Additionally, Nationwide has filed a motion for default judgment against M&S (Doc. No. 117). M. Peters and W. Peters filed *pro se* responses to Nationwide's motion for summary judgment (Doc. Nos. 103 and 104, respectively). Nationwide filed its replies (Doc. Nos. 108 and 109). Luthi also filed a response to Nationwide's motion for summary judgment against it (Doc. No. 113), and Great American also filed a response

to Nationwide's motion for summary judgment directed at Luthi (Doc. No. 114). Nationwide filed a reply to the opposition of Luthi and Great American (Doc. No. 121). M&S has filed no response.

Last, Great American filed a motion for summary judgment (Doc. No. 78). Nationwide filed a response (Doc. No. 111) and Great American filed a reply (Doc. No. 118).

## FACTS[1]

The parties do not contend that these are disputed facts in this case. The records shows:

1. By deed dated December 31, 2003, recorded January 12, 2004, W. Peters acquired title to the Enlow Court property. (Pl.Mem., Ex. G).

2. Richland County issued a "Residential Building Permit" to W. Peters on November 10, 2004. M. Peters was shown as "Applican[t]" and "Contractor". Trapp Electric was listed as "Sub-Contr-electrical."[2] (Pl.Mem., Ex. D).

3. Richland County records show that it inspected the Enlow Court property beginning in March of 2005 (*Id.*)

4. On November 10, 2005, an "Accord" builder's risk insurance binder was issued to M&S for the Enlow Court property which showed Luthi as mortgage holder. (Pl.Mem., Ex. O; Pl.Mem., Ex. N, p. 28).

---

[1]Nationwide's memorandum in support of its motions for summary judgment against M. Peters and W. Peters (Doc. No. 68) contains the most complete set of copies of relevant documents, deposition excerpts, and affidavits describing the transfers of title to the Enlow Court property, financing, insuring, and other matters which form the factual basis for this case. It will be cited as "Pl.Mem., Ex __" in this Report and Recommendation.

[2]By affidavit Robert Trapp of Trapp Electric Company states that he knows M. Peters but does not do business with him. Mr. Trapp disavows any association with the Enlow Court property. (Pl.Mem., Ex. E).

5.      Nealie Roy Cook ("Cook") is shown as Vice-President of M&S (Pl.Mem., Ex. S) and "Managing Partner" of M&S (Pl.Mem., Ex. R).

6.      According to W. Peters, M. Peters handled the financing of the Enlow Court property, inferring that her name was used. (Pl.Mem., Ex. GG, p. 139). According to M. Peters, he and not M&S constructed the Enlow Court house. M&S and Cook served as a conduit through which M. Peters was able to obtain financing from Luthi. Their agreement was verbal. (Pl.Mem., Ex. F, pp. 204-205). According to Cook, he and M. Peters had a verbal agreement that the Enlow Court house was to be sold to a third party when finished and the two would split the profits. (Pl.Mem., Ex. I, pp. 28-29).

7.      On December 5, 2005, W. Peters and M&S signed a contract for W. Peters to sell the Enlow Court property to M&S for $22,000. According to the contract, $500 was paid at that time and M&S was to obtain an $11,000 loan to be paid to W. Peters at closing. (Pl. Mem., Ex. W).

8.      By deed dated December 15, 2005, W. Peters conveyed the Enlow Court property to M&S for $22,000. (Pl.Mem., Ex. G). On the same date M&S and Cook, individually, executed a note and mortgage in favor of Luthi in the amount of $311,526.17. (Pl.Mem., Exs. K and U). Luthi's instructions to the closing attorney, Nick Atria of Columbia, provided payment of $11,000 to W. Peters for "balance of

4

other ½ to purchase lot." (Pl.Mem., Ex. P).

9.     By deed dated January 7, 2006, M&S conveyed a one half interest in the Enlow Court property back to W. Peters. The consideration clause on the deed shows "Partial Assumption of Existing Construction Lien" by W. Peters. (Pl.Mem., Exs. R and TT).

10.    Richland County records show that it made requested inspections on October 19, 2005, October 26, 2005, December 7, 2005, December 8, 2005, June 26, 2006, and September 11, 2006. (Pl.Mem., Ex. D). Additionally, Luthi caused inspections to be made which were used to justify disbursements under the construction loan. The record shows that Luthi's last inspection was performed on September 21, 2006 and a $5,000 "advance" disbursement was made. At that time it appears that $59,701 remained to be disbursed under the construction loan. (Pl.Mem., Ex. S).

11.    On January 25, 2007, Luthi filed a *Lis Pendis* on the Enlow Court property to begin foreclosure proceedings. (Pl.Mem., Ex. 2). The *Lis Pendis* showed that M&S, Cook, and W. Peters were defendants. The foreclosure action was referred to the Master-In-Equity on July 20, 2007. (Pl.Mem., Ex. LL).

12.    For reasons not entirely clear, M. Peters and W. Peters apparently decided not to sell the house on Enlow Court but to move into it. (Pl.Mem., Ex. I, p. 30). It appears that they applied for a loan through

Triumph Financial & Mortgage Services. In connection with that effort, Palmetto Real Estate & Appraisal performed an appraisal of the property on June 7, 2007, which showed the house was unfinished. (Pl.Mem., Ex. II).

13. The Accord builder's risk policy obtained by M&S was cancelled due to non-payment. (Pl.Mem., Ex. I. pp. 64-65). After Luthi received notification of cancellation of the builder's risk policy, it obtained a "forced placed policy" from Great American on the Enlow Court property to protect its interest. (Pl.Mem., Ex. T, p. 26).

14. In mid-July of 2007, two realtors from Coldwell Banker Realty performed a "Broker's Price Opinion" on the Enlow Court property. The house was unfinished and unoccupied. They estimated an additional $100,000 was needed to finish the dwelling. (Pl.Mem., Exs. JJ and KK).

15. On July 27, 2007, M. Peters applied for a homeowner's policy for the Enlow Court property at Morgan Associates. The agent, Sherri Orr, issued a Nationwide policy in the amount of $850,000 which listed Luthi as "First Mortgagee."[3] The policy was effective as of August 2, 2007, a closing date provided by M. Peters. (Pl.Mem., Ex. FF and MM).

_____

[3]According to Orr she "inadvertently" issued the policy as she did not have authority to bind coverage for a policy in excess of $750,000.

16.     On August 9, 2007, Nationwide sent M. Peters and W. Peters a notice that the policy was cancelled effective September 13, 2007 because "(a)dverse credit information was found in your credit report." (Pl.Mem., Ex. 00).

17.     A notice of cancellation was also sent to Luthi as it had been listed as the first mortgagee. (Pl.Mem., Ex. EE).

18.     Upon receipt, Luthi did not recognize the names of M. Peters and W. Peters. Luthi checked the real estate records and discovered that M&S had previously deeded a one-half interest in the Enlow Court property to W. Peters. (Pl.Mem., Exs. L and T).

19.     The house on Enlow Court burned on August 18, 2007 as a result of arson. (Pl.Mem., Ex. A).

20.     On December 19, 2007, M. Peters and W. Peters signed a "Sworn Statement in Proof of Loss" with Nationwide for a claim of $1,997,000. (*Id.*).

### Standard for Summary Judgment

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* Courts take special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir.), *cert. denied*, 484 U.S. 897 (1987). This does not mean that summary

judgment is never appropriate in these cases. To the contrary, "'the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material fact</u>.'" *Id.* (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." <u>Ross v. Communications Satellite Corp.</u>, 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." *Id.* at 718-19 (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." <u>Baber v. Hosp. Corp. of Am.</u>, 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Id.* and <u>Doyle v. Sentry Inc.</u>, 877 F. Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits [see Fed. R. Civ. P. 56(e)], depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. <u>Baber</u>, citing <u>Celotex Corp.</u>, <u>supra</u>. Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." <u>Mitchell v. Data General Corporation</u>, 12 F.3d 1310, 1316 (4th Cir. 1993) and <u>DeLeon v. St. Joseph Hospital, Inc.</u>, 871 F.2d 1229, 1233 (4th Cir. 1989), n.7.

Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. <u>Martin v. John W. Stone Oil Distrib., Inc.</u>, 819 F.2d 547 (5th Cir. 1987) and <u>Evans v. Technologies Applications & Services Co.</u>, 875 F. Supp. 1115 (D.Md. 1995).

When multiple parties file motions for summary judgment, as here, the court applies the same standards of review. <u>Taft Broad. Co. v. United States</u>, 929 F.2d 240, 248 (6th Cir.1991); <u>ITCO Corp. v. Michelin Tire Corp.</u>, 722 F.2d 42, 45 n. 3 (4th Cir.1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment-even where ... both parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied,* 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985). The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." <u>Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.</u>, 627 F.Supp. 170, 172 (D.Md.1985). "[B]y the filing of a motion [for summary judgment] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." <u>Nafco Oil & Gas, Inc. v. Appleman</u>, 380 F.2d 323, 325 (10th Cir.1967); *see also* <u>McKenzie v. Sawyer</u>*,* 684 F.2d 62, 68 n. 3 (D.C.Cir.1982) ("[N]either party waives the right to a full trial on the merits by filing its own motion.").

<u>**Discussion**</u>

**1. The Peters**

Nationwide has moved for summary judgment against M. Peters and W. Peters. Nationwide seeks recession of its policy based on M. Peters misrepresentation of material facts to Sherri Orr during the application process. Nationwide asserts that had M. Peters given Ms. Orr truthful

information, the policy would not have been issued. This assertion is supported by Ms. Orr's affidavit. In their *pro se* responses to Nationwide's motion, M. Peters and W. Peters maintain that summary judgment should be denied because they were not properly served with the motion, M. Peters did not knowingly make false representations to Nationwide, and both M. Peters and W. Peters qualified as insured as defined by the policy.

### a. Service of Process

Nationwide filed its motion for summary judgment against M. Peters and W. Peters on January 12, 2009. There is no certificate of service included in the record. In its reply memorandum, Nationwide argues that it properly served Jerry N. Screen, Esquire, the attorney of record for M. Peters and W. Peters at the time of the filing of the motion, with a copy. M. Peters and W. Peters concede that Mr. Screen was served with the motion. The issue, therefore, is whether service was effective on these Defendants through Mr. Screen.

The record shows that Mr. Screen attempted to withdraw as attorney for M. Peters, W. Peters, and M&S before the motion for summary judgment was filed. Mr. Screen filed his first motion to be relieved on September 17, 2008. The Court denied the motion on September 30, 2008, but stated that a renewed motion could be filed following completion of depositions. The Court spelled out specific requirements for a renewed motion. Mr. Screen filed his renewed motion to be relieved on November 24, 2008. The motion was denied on November 25, 2008, because it did not comply with the Court's previous order.

Mr. Screen filed his third motion to be relieved on January 5, 2009. While that motion was pending, Nationwide filed its motion for summary judgment on January 12, 2009. Mr. Screen's

motion to be relieved was granted on January 26, 2009.[4]

Rule 5(a)(3), Fed.R.Civ.P., provides that "(i)f a party is represented by an attorney, service [of process] under this rule must be made on the attorney unless the court orders" otherwise. It appears from this record that Nationwide served Mr. Screen with a copy of its motion for summary judgment. M. Peters and W. Peters state that the "(s)ummary judgment motion was served on Jerry N. Screen, Esquire." As attorney of record, this service was effective. Mr. Screen was, of course, obligated to notify his clients that the motion had been filed and provide them with a copy. The Peters do not assert that Mr. Screen failed to do this. The responses of M. Peters and W. Peters, though short, indicate that they were aware of Nationwide's arguments because they responded accordingly. The Peters do not assert that they have been prejudiced because they were not personally served. Therefore, the undersigned concludes that the Peters cannot avoid summary judgment for lack of personal service.

### b. Recision

Nationwide, in its motion for summary judgment, asserts that it is entitled to recision of the insurance contract because M. Peters made material false statements on his application. The Peters argue that they did not knowingly make false statements.

Under South Carolina law:

A contract may be reformed or rescinded, as the justice of the case may require, upon the ground of mistake, under these circumstances: (1) Where the mistake is mutual and is in reference to the facts, or supposed facts, upon which the contract is based; (2) where the mistake is mutual and consists in the omission or insertion of some material element affecting the subject-matter or the terms and stipulations of the

---

[4]It was at this point that this action was referred to the undersigned and an order pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975) was issued on January 30, 2009. The Peters' responses were filed on February 10, 2009.

contract, inconsistent with those of the parole agreement which necessarily preceded it; (3) where the mistake is not mutual, but unilateral, and has been induced by the fraud, deceit, misrepresentation, concealment, or imposition in any form of the party opposed in interest to the reformation or rescission, without negligence on the part of the party claiming the right; (4) where the mistake is not mutual, but unilateral, and is accompanied by very strong and extraordinary circumstances, showing imbecility or something which would make it a great wrong to enforce the agreement, sustained by competent testimony of the clearest kind. (Citations omitted.)

Shaw v. Aetna Cas. & Surety Ins. Co., 274 S.C. 281, 285, 262 S.E.2d 903, 905 (1980),

quoting Jumper v. Queen Mab Lumber Co., 115 S.C. 452, 106 S.E. 473 (1921).

Nationwide asserts a unilateral mistake induced by misrepresentation. An applicant for an insurance policy is required to give truthful and full information in the application process to allow the insurer to determine whether or not to assume a risk. "A misstatement of material facts by the applicant takes away [the insurer's] opportunity to estimate the risk under its contract." Southern Farm Bureau Cas. Ins. Co. v. Ausborn, 249 S.C. 627, 637, 155 S.E.2d 902, 907 (1967). In order to obtain recision, the insurer must:

show not only that the statements made by the [insured] in his application were untrue, but in addition that their falsity were material to the risk, and relied on by the insurer, and that they were made with the intent to mislead and defraud the insurer.

Id., Accord Government Employees Insurance Co. v. Chavis, 254 S.C. 507, 513, 176 S.E.2d 131, 134 (1970) and Strickland v. Prudential Insurance Company of America, 278 S.C. 82, 86, 292 S.E.2d 301, 304 (1982).

In her affidavit (Pl.Mem., Ex. MM), Sherri Orr explained that Nationwide utilizes a two-part application process consisting of a pre-application interview, and the application itself. If information is gained in the first phase that would preclude issuance of a policy, no application is taken. Sherri Orr used a "Pre-Binding High Value Home Request" form during the pre-application process. (Pl.Mem., Ex. NN). Nationwide asserts that had M. Peters been truthful in his answers,

some of which are reflected on the form, Sherri Orr would not have proceeded to the application process and no policy would have been issued.

Nationwide points to six different misrepresentations of M. Peters during the pre-application process: (1) the house was completed; (2) a closing was set for August 2, 2007; (3) he had no judgments, foreclosures, repossessions, or bad debts within five years; (4) he had no delinquent accounts in the past two years; (5) he would be a title owner of the property after closing; and (6) Luthi had loaned M. Peters and W. Peters the money to construct the residence. According to Sherri Orr, a truthful response to any of these issues would have resulted in no policy being issued.

Even though M. Peters testified in his deposition that the house was completed as of the date of the application (M. Peters Dep., 203), he gave evasive answers on the specifics. He acknowledged that some rooms only had sub-flooring, that some of the bathrooms were not finished, and that construction materials remained in the house. (*Id.* 60-61, 138, 157). Inspections done in June and July of 2007, indicated that the house was not completed and substantial work needed to be done. (Pl.Mem., Exs. II, JJ and KK). M. Peters and Cook sought additional money from Luthi to finish the house <u>after</u> the loan application. Luthi refused to disburse additional funds because the deed from M&S to W. Peters was discovered. (Sartain Dep., 54-56; Cook Dep., 30, 51). Further, no certificate of occupancy was ever issued by Richland County. (Pl.Mem., Ex. B).

M. Peters also told Sherri Orr that he had no delinquent accounts, foreclosures, repossessions or bad debts. Nationwide obtained a credit report and determined that M. Peters had all of these disqualifying items. (Pl.Mem., Ex. TT). It was based on this credit report that Nationwide sent the notice to the Peters and Luthi that the policy would be cancelled.

The remainder of the false statements made to Orr relate to a non-existent closing date, and

what would be required to complete the transaction. At the time of the application, the property was jointly owned by W. Peters and M&S. This arrangement did not change.

It appears that the financing of the house was based on deception from the beginning. M&S obtained title to the property through Cook and obtained a loan from Luthi. M&S then deeded an interest in the property to W. Peters without the knowledge and consent of Luthi. M&S continued to receive draws from Luthi. It is clear that M. Peters could not obtain, and had no intent to obtain, an interest in the property because he had judgments recorded against him. (Pl.Mem., Ex. HH, p. 60). Thus, it was a material misrepresentation when M. Peters told Sherri Orr that he and W. Peters would be the owners of the property. M. Peters told Sherri Orr that the closing would take place on August 2, 2007. However, there is nothing in the record that indicates that W. Peters (and/or M. Peters) ever applied for, or were approved for, an owner-occupied residential loan to obtain clear title to the Enlow Court property. Last, M. Peters told Sherri Orr that Luthi was the loss mortgagee for the property. The record indicates that Luthi never made a loan to M. Peters and/or W. Peters, or that it had any intention to do so.

The undersigned concludes that M. Peters made material false statements to Sherri Orr in order to obtain the Nationwide policy. Therefore, Nationwide is entitled to recision.

### c. Insurable Interest and "Insured"

Nationwide argues that it is entitled to summary judgment because M. Peters, the only person who applied for the homeowner's policy, did not have an insurable interest in the property. Nationwide also argues that W. Peters did not qualify as an "Insured" under the terms of the policy because she never resided on the property.

Nationwide cites <u>American Mut.Fire Ins.Co. v. Passmore</u>, 275 S.C. 618, 620, 274 S.E.2d 416,

417 (1981) for the general proposition that a person must have an insurable interest in the property which is insured to have a valid claim against the insurer. Passmore dealt with insurance coverage under an automobile liability insurance policy. Nationwide's argument is based on the fact that M. Peters did not have title to the property and did not intend to take title to the property because he had judgments recorded against him. However, under South Carolina law, a person may have an insurable interest in property even though he is not a titleholder of the property. In Benton & Rhodes, Inc. v. Boden, 310 S.C. 400, 404, 426 S.E.2d 823, 826 (1993), a case dealing with coverage under a fire insurance policy, the Court of Appeals of South Carolina, quoting 43 Am.Jur.2d Insurance § 943 (1982) stated:

> The principle may be stated generally that anyone has an insurable interest in property who derives a benefit from its existence or would suffer loss from its destruction.
>
> Policies will be maintained where it is clear that the party insured had an interest which would be injured in the event the peril insured against should happen. It is not necessary to constitute an insurable interest that the interest be such that the event insured against would necessarily subject the insured to loss; it is sufficient that it might do so, and that pecuniary injury would be the natural consequence. Moreover, an insurable interest in property does not necessarily imply a property interest in, or a lien upon, or possession of, the subject matter of the insurance, and neither the title nor a beneficial interest is requisite to the existence of such an interest, it is sufficient that the insured is so situated with reference to the property that he would be liable to loss should it be injured or destroyed by the peril against which it is insured. For instance, although a person has no title, legal or equitable, in the property, and neither possession nor right to possession, yet he has an insurable interest therein if it is primarily charged in either law or equity with a debt or obligation for which he is secondarily liable.

The Court of Appeals held that a seller of a piece of logging equipment maintained an insurable interest in the property. The court cited Reid v. Hardware Mut. Ins. Co. of the Carolinas, 252 S.C. 339, 166 S.E. 2d 317 (1969) which held that an insured under a fire insurance policy who sold her house for consideration which included the purchaser's assumption of the mortgage, retained

an insurable interest because she remained liable under the original note. In the present case, M. Peters may have had an insurable interest if he was liable to M&S or Luthi for the funds advanced to construct the dwelling. However, M. Peters had not suggested he is liable. Luthi advanced the funds to M&S and was unaware of the involvement of M. Peters. Based on this record, the undersigned concludes that M. Peters had no insurable interest in the property.

On the other hand, W. Peters had an insurable interest in the property because she was a titleholder (along with M&S), at the time M. Peters applied for the policy with Nationwide. Further, W. Peters had assumed the Luthi loan as part of the consideration in the deed from M&S. However, Nationwide asserts that W. Peters was not qualified as an "insured" under the policy because she never resided on the property.

M. Peters applied for the policy indicating that he and W. Peters would be the homeowners and the insured. The policy (Pl.Mem.,Ex. G) was issued listing M. Peters and W. Peters as the "Named Insured." The policy defines "You" and "Your" as used in the policy as "the named insured shown in this policy who resides at the residence premises. These terms also mean your spouse who resides at the same residence premises."

Under South Carolina law pertaining to interpreting an insurance contract:

> The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language. Parties to a contract have the right to construct their own contract without interference from the courts to rewrite or torture the meaning of the policy to extend coverage.
> If the contract's language is clear and unambiguous, the language alone determines the contract's force and effect. When a contract is unambiguous a court must construe its provisions according to the terms the parties used; understood in their plain, ordinary, and popular sense."

Schulmeyer v. State Farm Fire and Casualty Co., 353 S.C. 491, 495, 579 S.E.2d 132, 134 (2003) (internal citations omitted).

W. Peters does not argue that the terms of the insurance contract are ambiguous. The undersigned concludes that W. Peters is not an insured as defined by the policy because she never resided at the insured premises. According to her, she last visited the house approximately one week before the fire. M. Peters may have moved some of their furniture and possessions into the house, but she never stayed there overnight. (W. Peters Dep. 82, 132 and Pl.Mem., Ex. UU, p. 116).

### 2. M&S

Nationwide has moved for summary judgment as to M&S (Doc. No. 70), arguing that M&S was not an insured under the homeowner's policy and not known to have any interest in the property due to the representations of M. Peters. Nationwide has also moved for default judgment as to M&S (Doc. No. 117). M&S has not responded to Nationwide's motion.

M&S is not an "insured" under the terms of the Nationwide policy as discussed above. Further, the record shows that this Court previously ruled that M&S is in default (Doc. No. 88), and default has been entered against M&S (Doc. No. 89).

### 3. Nationwide, Great American, and Luthi

The remaining motions for summary judgment address the respective interests of Nationwide, Great American, and Luthi under the policies issued by Nationwide and Great American. Nationwide's motion (Doc. No. 69) asserts that Luthi is not entitled to any recovery from it based on the terms of its policy issued to M. Peters and W. Peters. Luthi has filed a response (Doc. No. 113). Even though Nationwide's motion was directed at Luthi, Great American also filed a response (Doc. No. 114) arguing that Luthi is entitled to recover from Nationwide. Nationwide's reply (Doc. No. 121) addresses the arguments of both Luthi and Great American. Great American's motion (Doc. No. 78) seeks summary judgment against Nationwide and Luthi. Nationwide responded to

Great American's motion for summary judgment (Doc. No. 111). Luthi has not responded to the motion nor has Luthi sought summary judgment as to Great American.

The memoranda discuss the application of certain clauses within the Nationwide and Great American policies to the tangled web of facts created by the unconventional and unusual transactions between M&S, Cook and the Peters. Under South Carolina law

> Insurance policies are subject to the general rules of contract construction. <u>Century Indem. Co. v. Golden Hills Builders, Inc.</u>, 348 S.C. 559, 561 S.E.2d 355 (2002). We must give policy language its plain, ordinary, and popular meaning. *Id*. An insurance policy is to be liberally construed in favor of the insured and strictly construed against the insurer. <u>Kraft v. Hartford Ins. Companies</u>, 279 S.C. 257, 305 S.E.2d 243 (1983). Further, exclusions in an insurance policy are always construed most strongly against the insurer. <u>Century Indem. Co. v. Golden Hills Builders, Inc.</u>, *supra*.

*See* <u>American Credit of Sumter, Inc. v. Nationwide Mut. Ins. Co.</u>, 378 S.C. 623, 663 S.E.2d 492 (S.C.2008).

### a. **Nationwide v. Luthi**

Nationwide asserts that it is entitled to summary judgment against Luthi based on the terms of its policy issued to M. Peters and W. Peters. As discussed above, Luthi was listed as the "first mortgagee" on the Nationwide policy. (Pl.Mem., Ex. FF, p. 2).

The parties appear to argue that if Nationwide has any obligation to Luthi it arises out of the loss payee clause in the Nationwide policy. The loss payee clause of that policy states in part:

> If a mortgagee is named in this policy, a loss payable under Coverage A or B will be paid to the mortgagee and you, as interest appear. If more than one mortgagee is named, the order of payment will be the same as the order or precedence of the mortgages. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the Mortgagee:
>
> > a) notifies us of change in ownership, occupancy, or substantial change in risk of which the mortgagee is aware.
> >
> > b) pays premium due under this policy on our demand, if you neglected to pay the premium.

c) submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Your Duties after Loss, Loss Payment, Appraisal, and Suit Against Us apply to the mortgagee.

(Pl.Mem., Ex. FF, p. E3).

The rule appears universal that a mortgagee's ability to recover on an insurance policy where there has been misconduct by the insured is dependent on the type of mortgage clause used in the policy.

There are two major categories of mortgagee clauses: (1) loss-payable and (2) standard clauses. A loss-payable (or open mortgage) clause typically declares that the loss, if any, is payable to a mortgagee as its interest might appear. Walker v. Queen Ins. Co., 136 S.C. 144, 134 S.E. 263 (1926). The standard (or union or New York mortgage) clause uses language similar to the loss-payable, but further stipulates that, as to the interest of the mortgagee, the insurance shall not be invalidated by certain specified acts of the insured, which continue as grounds of forfeiture against him.

Nationwide Mut. Ins. Co. v. Hunt, 327 S.C. 89, 92, 488 S.E. 2d 339, 341 (1997).

The parties agree that the clause in the Nationwide policy is a standard clause. Under a standard clause, misconduct by the insured (the Peters) will not invalidate a claim by the mortgagee (Luthi) which was listed on the policy as a lienholder. Nationwide appears to rely on language contained in an earlier case by the Court of Appeals of South Carolina which stated "[a] mortgagee's rights under a fire insurance policy are dependent upon the existence of a secured debt owed the mortgagee by the mortgagor - insured; to this extent the mortgagee cannot be independent of the insured." Fort Hill Federal Sav. and Loan Ass'n v. South Carolina Farm Bureau Ins. Co., 281 S.C. 532, 537, 316 S.E.2d 684, 687 (Ct.App. 1984). Nationwide asserts that since there was no debt owed by the insureds (the Peters) under its policy to the mortgagee (Luthi) listed in the policy, the mortgagee (Luthi) cannot recover under its policy. However, in discussing this language in Hunt, the Supreme Court recognized that the Court of Appeals qualified this language by stating that

> (t)here is, in reality, only a semantic difference in the South Carolina rule and the majority rule that the mortgage clause creates a distinct and independent contract. Our court wisely reserves certain conditions and subrogation rights, but absent these considerations, our rule vests the mortgagee with a status which includes all the rights incident to an independent and separate contract and the insured can do nothing either by act or neglect which will divest him of these rights other than payment in full of the mortgage indebtedness.

Hunt, 488 S.E.2d at 342-343, quoting Fort Hill, 316 S.E. 2d at 688.

After assessing this qualifying language, the Supreme Court concluded "that there is no substantive difference between the majority rule and the rule in South Carolina." Hunt, 488 S.E.2d at 343.

Based on these cases, the undersigned concludes that Nationwide's argument is without merit. W. Peters became liable on the debt of M&S to Luthi when she assumed a portion of the mortgage from M&S to Luthi when M&S deeded her a one-half interest in the property. If Nationwide's argument is accepted, a mortgagee (lender) would not be protected after the purchase of a residence, based upon consideration of an assumption of an existing mortgage and a new homeowner's policy. Such an outcome would be contrary to practice and policy.

Nationwide further argues that Luthi should not be allowed to recover under its policy because Luthi failed to comply with conditions of the clause quoted above which required Luthi to notify Nationwide of a "change in ownership, occupancy, or substantial change in risk of which the mortgagee (Luthi) is aware," and to submit "a signed, sworn proof of loss within 60 days after receiving notice from us (Nationwide) of your (Luthi's) failure to do so."

Even though Luthi should have been aware of the deed from M&S to W. Peters as early as January of 2007,[5] there is no evidence or argument that Luthi was aware of any change of ownership,

_____

[5]W. Peters was listed as a defendant in the Lis Pendis filed in connection with Luthi's mortgage foreclosure action. (Pl.Mem., Ex. 2).

occupancy, or substantial change in risk after Luthi received notice of the existence of the Nationwide policy.  Further, under the terms of the clause, Luthi was not required to submit a proof of loss unless it was notified that the Peters had failed to submit their own proof of loss.  It is clear that the Peters submitted a proof of loss, and there is no indication that Nationwide sent Luthi the required notification to trigger any responsibility of Luthi to do so.

Nationwide's motion for summary judgment against Luthi should be denied.

### b. Great American v. Luthi

Great American, third party defendant, has moved for summary judgment against Luthi and Nationwide, arguing that Luthi is not entitled to collect under its policy issued to Luthi based on the policy's "Other Insurance" clause.  Notably, Luthi has not responded to Great American's motion for summary judgment.[6]  Nationwide has filed an opposition memorandum asserting that Great American lacks standing to seek a judgment against it and that Great American's coverage afforded M&S and Peters is not barred by the "Other Insurance" clause in the policy issued by Great American to M&S.

In its third party complaint, Luthi asserts that if coverage does not exist under the Nationwide policy, it is entitled to coverage and payment of the mortgage from Great American.  In its third party answer, Great American asserts that if the property was covered by "other insurance" as defined by its policy, then Great American would not be required to pay Luthi or would be liable only for excess.  Therefore, the primary issue raised by Great American's motion for summary judgment is

---

[6]Luthi's only foray into the quagmire of cross-motions for summary judgment is an opposition memorandum to Nationwide's motion for summary judgment against it in which it made a short argument and adopted the memorandum of Great American in opposition to Nationwide's motion for summary judgment against it (Luthi).

whether the Nationwide policy constitutes other insurance under the Great American policy.

The provision in the Great American policy states:

> **Other Insurance** - if the property is covered by the **debtor's acceptable hazard insurance,** this insurance shall not apply and shall not contribute to the payment of any loss, whether **you** can collect on it or not.  If the property is covered by another insurance other than the **debtor's acceptable hazard insurance**, **our** coverage shall be excess of the amount due from that other insurance, whether **you** can collect on it or not. (Emphasis in original).

(Nationwide Response to Great American's Motion for Summary Judgment, Ex. I, p. 10).

Having concluded that Nationwide is not entitled to summary judgment against Luthi, it follows that Luthi is entitled to coverage under the Nationwide policy.  Therefore, the issue is whether the Nationwide policy constitutes "Other Insurance" under the Great American provision quoted above.  Nationwide makes the same arguments with respect to Great American that it did in its summary judgment motion against Luthi.  By assuming a portion of the loan from M&S and Cook to Luthi, W. Peters became obligated to pay the Luthi mortgage.  Thus, she became a debtor to Luthi, along with M&S and Cook.  The undersigned, therefore, concludes that Great American's motion for summary judgment against Luthi and Nationwide should be granted.

### Conclusion and Summary

Based on a review of the record, the undersigned recommends that:

(1)    Plaintiff's (Nationwide's) motion for summary judgment against Defendants, Mark and Wendy Peters (Doc.No. 68) be **granted;**

(2)    Plaintiff's (Nationwide's) motions for summary judgment and default judgment against the Defendant, M&S Construction Company, LLC, (Doc.Nos. 70 and 117)  be **granted**;

(3)    Plaintiff's (Nationwide's) motion for summary judgment against Luthi Mortgage Company, Inc., (Doc.No. 69) be **denied**; and

(4)    Third Party Defendant's (Great American Assurance Company's)

motion for summary judgment against Third Party Plaintiff, Luthi Mortgage Company, Inc., and Defendant Nationwide Property and Casualty Insurance Co., (Doc.No. 78) be **granted**.

If the Court accepts these recommendations, Luthi Mortgage Company should be allowed to collect from the proceeds of the policy issued by Nationwide Property and Casualty Company based upon the debt assumed by Wendy Peters. The amount that Luthi Mortgage Company is entitled to receive is unclear, and the undersigned recommends that a hearing be held for this determination.

_____
Joseph R. McCrorey
United States Magistrate Judge

Columbia, South Carolina

August 28, 2009

**The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).